Case number 21-1694, James Fox et al. v. Heidi Washington, oral argument is not to exceed 15 minutes per side. Mr. Manville, if you'd like to make some opening remarks. Thank you. Your Honors, Professor Daniel Manville, Michigan State University College of Law, Director of the Civil Rights Clinic. In this case, we filed a motion to have a law student provide the argument, and I wanted to introduce her. This court granted that request, and I'd like to introduce the law student, Maria Lassiter. Thank you very much. Welcome, Ms. Lassiter. We're thrilled to have you here, and you're free to proceed when you're ready. Thank you. Your Honors, I'd like to reserve two minutes for rebuttal. Okay. Good morning, Your Honors, and may it please the court. Student Attorney Maria Lassiter, representing appellants Fox and Perotte, hereafter Fox. This case was previously before this court at site 949F3D270. This court found that two of the three prongs from RLUIPA were established. This case was remanded to have a second evidentiary hearing for the third RLUIPA prong. In this remand, the court said, to deny plaintiff's request for recognition of the Christian identity faith. I'm going to address three issues. One, Todd Butchler's testimony was in violation of this court's order on remand. Two, the security concerns, and three, the least restrictive means. Regarding... Ms. Lassiter, you're free to spend your time arguing whatever issues you wish, but as the author of the first opinion, I think it would be more worthwhile if you concentrated on issues three and four of your brief, and those are whether the defendant satisfied the strict scrutiny standard that they were required to, whether they established that there is a compelling governmental interest in prison safety and security in not recognizing the religion, and two, if so, whether they considered least restrictive means of furthering the governmental interest. I'm not particularly focused on the evidentiary questions or even the testimony of the expert. I don't think the case is going to rise and fall on whether you win issues one and two of your brief, but I think your appeal will win or lose depending on issues three and four, so at least as one judge on the panel, I would prefer it if you'd please spend your time on the third and fourth issue, which I think are the critical issues. Okay, thank you, Your Honor. Regarding the security concerns, this court has held that the RLUIPA analysis requires the government to demonstrate the compelling security interest is connected to the particular inmates who filed the lawsuit. In this case, is that really true? Isn't it whether the recognition of their religion would further or the denial, whether the denial of the recognition of the religion would further a compelling governmental interest? Isn't that what we're looking at is the religion rather than the plaintiffs? We are looking at the religion. However, in Haight v. Thompson, you all held that the compelling security interest must be connected to the – must be particularized to the inmates. Well, it's got to be particularized to the prison setting, but if we ordered the defendant to recognize the Christian identity of religion in the Michigan prisons, it would not only apply to these two plaintiffs, it would apply to all prisons in the state of Michigan and all prisoners who wish to practice it. Isn't that correct? That is correct, Your Honor. OK, so I see it. They had to sustain a burden of showing that the denial of recognition furthered a compelling state interest. And prison safety, I think you agree, is a compelling interest. But how does denying recognition of the religion further that interest? That's my question. It's a better question for the other side, but tell me why you think they did not sustain their burden showing that. Your Honor, we believe that they did not sustain that burden because MDLC currently recognizes two other religions that do have a history of racial violence and separatist beliefs. Both the Nation of Islam and the Black Hebrew Israelites. And specifically, the Nation of Islam has been recognized by MDLC for over 25 years. And the Nation of Islam is known for its theology of the separation of the races, disavowing interracial marriage. Let me ask you, Counselor, is that in the record? My concern about treating this as if it is a comparator issue, almost like Title VII, is problematic in the context of the text, of the test that applies here. My read on the Nation of Islam is that Perot, I'm not sure how he pronounces his name, testified. That's the only testimony about that as a comparator, with the exception of a brief bit of testimony by Mr. Belcher. So is the record adequate to make that determination based on a comparator like the Nation of Islam? Your Honor, we also had some evidence through David Leitch's deposition. David Leitch was the Special Activities Coordinator for MDLC, and he did testify as to the Nation of Islam. And that there were some disturbances that have occurred from inmates who are part of the Nation of Islam. And he even went as far as to say that he did attempt to try and get them labeled as a security threat group. So I do believe that the record was developed as to the Nation of Islam. Well, if the record was adequate, wouldn't it help the case if the record was not adequately developed by the government? Isn't that their burden to place those issues into the trial? And if they failed to show how there was a support of this compelling interest regarding security, then it would be their fault. Yes, the burden does shift to MDLC to prove that they do have a compelling governmental interest and that they've used the least restrictive means in furthering that interest. Mr. Ambassador, I have a question I just want to make sure I'm understanding. Let's say you win and you get recognition and let's say your clients are able to worship together. Do you agree that they're not allowed to exclude people based either on their faith or race from participating in those worship services? Yes, Your Honor, I do agree that they're not allowed to exclude. Even though their religion seems to prefer one race worship. Yes, even though their religion does seem to prefer that. However, both Fox and Peralta have testified that they're more than that. Other inmates will be allowed to come to their that they understand. Other inmates will be allowed to come to their worship sessions and that they wouldn't be forcing them not to come. Second question. Again, let's just say for the sake of argument, you happen to win. You're recognized and either during services or as a result of services, there's stuff that counts as hate speech or there's actual physical problems. You know, so either words that are threats or actual some form of violence. I take it you agree at that point. They've you know, the prison is in a position to say we've satisfied strict scrutiny and therefore we're going to have to stop the worship services. Yes, at that point, MDOC can they even have they can label the group as a security threat group and then they wouldn't be able to meet in groups in the facility at all. And that would apply to the whole group, even if only one person engaged in the violence or hate speech or threats. They can label a security threat group or individuals can be labeled as security threats. So it's two different options. What's your general reaction to this problem that, you know, it's not an easy it's not easy to run a prison. And one serious problem in prisons when it comes to violence is violence that relates to the common word would be gangs. But the point is, it can be affinity groups, I guess, would be a kinder way to put it. But quite often they can be Aryan nation. I mean, they're really it's very problematic. And so why, why shouldn't we be giving some deference to these prison administrators who really, let's face it, have a very difficult job, and, you know, violence is bad enough in prison but race based violence, you know, doubles and triples the negativity of it. Why shouldn't we be giving them some deference in this. Your Honor, because the plaintiffs Fox and Peralta, they've testified that while the Christian identity faith does. It does, does not. They don't advocate for separation of races in terms of marriage and worship. They're not, it's not a violent faith, they introduced evidence at trial of the writings of the Christian identity faith, and they reject violence and. And neither of these inmates have a history of violence in MDLC. And additionally, they've gone as far to testify that if a member of the Christian identity faith during a worship session were to attempt to call the disruption during their session that they, that they wouldn't be accepted as a member of their faith. If this is if this is true, why don't more prisons, recognize them, I mean, does, does the record reflect whether the Federal Bureau of Prisons for example, do they recognize Christian identity and permit worship services. The record does not reflect that, Your Honor. Does the record tell us about any other state prisons. No, no, Your Honor. Does it doesn't say either way. Does it say that they were denied recognition that it's a silent on that right. Yes, Your Honor. All right, well who's burden is it at this point is that your burden, or their bird. It's theirs isn't it. Yes, Your Honor. Yeah, okay. All right, smiling because she's smiling because she wants harder questions judge Griffin. Okay, he was prepared for hard questions not easy ones. Well, in regard to the services, it's my understanding that the, the non Caucasian would have would be allowed to attend services but they would just would not be able to become members of the church. Is that right. Yes, Your Honor, because they are they are allowed to attend services, I see them out of time may I finish my response. Yes. Okay, they, they are allowed to, they have they are allowed to attend services, but they wouldn't be members of the Christian identity faith. Sure, I mean you know Protestants can go to a Catholic mass, but they can't take communion, till they become a member or are members. I mean there's a lot of analogies, like non non members attending services. Anyway, I want to thank you for your, your service to the, to the, to the lineups and. All right, we'll hear from Mr Dean then you'll get your full rebuttal Miss Lassiter. All right, Mr Dean. Good afternoon, Your Honor, and thank you for your time. We're now in front of this court for the second time on the issue of whether or not the Michigan Department of Corrections should be compelled to formally recognize a religion, who specifically requires racially segregated services and I'd like if you, if I might, to be able to address that last issue, Your Honor. Go ahead. The process for prisoners when they designate a religion. It's actually a declaration that they make to the MDOC. Hey, I want to check the box that I'm a Christian identity member and the MDOC at that point cannot in any way restrict that membership by them based on the fact that of race or any other category and in fact that would be a violation of equal protection. So the potential problem that we've got here in formal recognition because the MDOC does not deny either plaintiff or any member to identify as a Christian identity member they just don't formally recognize their ability to have group worship services, and under the I think we're on the same page. They've agreed that to the extent there any tenants of their faith that could be described as prohibiting worship by others that they will not insist on complying with those. And while I don't think this is happens to be a faith that promotes violence. Everyone agrees you can't violate those independent prison rules and if you do you're going to run into trouble. So how have you satisfied strict scrutiny under those circumstances. I mean there are there are the ones that are allowed to say we're willing to worship under these circumstances. I assume that's a welcome concession from your perspective. So tell me why you satisfied your strict scrutiny burden. The strict scrutiny burden that the MDOC had to satisfy is not a general justification for it under safety and security, but a specific compelling interest and in this case, it's the Christian identities insistence that they have racially segregated services. Now council tried to point out the fact that Nation of Islam is a is a racially segregated religion but Todd Bechler testified during the evidentiary hearing that the Nation of Islam does not have a requirement restricting members of other races to be at their services. And where do you come up council where do you come up with this I just asked plaintiffs counsel, whether non members could attend services and they said yes you say that that's wrong what we're in the record you, you. I say like that. Yes, I do say that's wrong because both plaintiffs testified that they would strongly cool or counsel people that they do not belong here. Tell me where they said that I, I've read. I think you're pushing the envelope on the evidence. Yeah, I think you're very much so. I said they would they would warn them, warn them, but they would let them attend services and you say that they would be prohibited from attending. I don't think that's an accurate representation of the record, but the problem with that thought is facing the reaction of the entire Christian identity faith on to plaintiffs who have a vested interest in portraying their religion in a positive light when the historical record. What do you have to the contrary, I mean we're, we're, we set this back for two evidentiary hearings. Yes, you have something that's contrary to what the plaintiffs testified to, I think you had to contradict it. Well, I think you have to look at Todd Beckler's testimony in I did identity, and that they are a violent organization and okay you're you're you're switching issues here we're talking about services, allowing non members to attend services, and I'm still asking you we're in the record can I can I see that that is what the religion requires, or that's what would be required here. Well, if we said that they should have been recognized. Well, what I would say is that their own testimony throughout the trial and their evidentiary hearing is that they believe in separation of the races your honor. Okay, you're not answering my question Mr Dean I don't I don't know if you can't hear me or what. Mr Dean, let me, let me try to look at this question is slightly a different way, but I want to try to get to the same point I think Judge Griffin's trying to get you to answer. You know, and I'm going to hypothesize a faith that I don't think exists, but historically there have been faiths along these lines. So you have an ancient faith that has 100 tenants. All right, 99 of them are quite similar to other faith groups there's nothing unusual there's nothing violent threatening racist or anything. But tenant number 100 says we have you know child sacrifice one every seven once every seven years. Now I'm assuming that the way RFRA works is yes, you would be allowed to say you can't enforce tenant 100 in our prisons. But if the faith, the believers came forward and said we appreciate the point. All we want to do is respect the other 99 which do not create these problems do not violate prison rules. In the abstract I assume you agree that's okay right they can say we realize we can't practice that last tenant. And then you've got to accept it right. Are we in agreement about that point. I think so your honor. Okay, so that just leads to what I think Judge Griffin is trying to say which is, why aren't you willing to accept the concessions of the two plaintiffs, that they are going to allow inter race interfaith worship. And, you know, you're allowed to say evidence develops after that that shows violence occurred. People were excluded. Voila, you have the evidence you need to satisfy strict scrutiny but I guess I'm puzzled why that's so troubling for the prison. Well, two things I would say number one that the two plaintiffs don't speak for the entire religion and the historical impact that that religion in this country. which is unique in the MDFC there are no other religions. Here's the part I don't understand about your barn doors. Don't open the door. All right, they don't get into worship without an agreement that all comers are permitted. There's no exclusion based on race there's no exclusion based on faith, or any other impermissible ground violence is not permitted. Don't come if that is something you think is contemplated here that no there's no door opening you you make that clear at the outset. Your Honor, I would respectfully disagree that in the prison setting that rule setting like that, saying hey don't engage in bad behaviors does not stop the prison population from engaging in violent and criminal behavior. The MDFC has a application number one to protect all the constitutional rights by, and in this case would be forced to allow prisoners to join that religion who may have no other purpose to join that religion, then the full foment this disruption within the I mean, I think you probably have a panel of judges that accepts your concern that these things could happen. But what I don't understand and I'm now I'm speaking only for myself is why you can't find the evidence. This is a big country that federal prisons their state prisons. If you think it's so obvious this is a violence, fomenting group, or an exclusionary group. Show us the evidence when they had a, they, I know some states do permit them to worship. Show us the evidence where it broke down, and then you've, you've got what you need. I do. I'm not personally aware of any states that have allowed the Christian identity to have group worship service aware of any that have rejected it in the record. publications from Christian identity to enter the prison, because of the violent in the racial segregation link. Let me ask you. That's Apple storages. Let me ask you about the test. Let's assume that some of us agree with you that this is a compelling government interest and that you've met that standard. What strikes me as problematic here is the prong of the less restrictive alternatives, the less restrictive means and, you know, I'm looking at your rules, your rules that you in the policy must and are authorized to enforce. The, the in room staff supervision, for example, the security threat group designation, either for individuals or the group itself, and then based on your own rules. The question of designations of religion. Let's assume that you've got a troublemaker. Well, that troublemaker can't come to that group, assuming that they've got five people to even meet in order to qualify for group services, but let's assume they do. Then, the only people who can come are the people who have selected that is there one religion, and they can't switch back and forth, except for twice a year. So, why, why is the problem in this case not the least restrictive alternative. The least because the proposed least restrictive alternative that the plaintiffs have suggested is that they give them a trial run which leads back to my argument that that is allowing the problem of. Why would these plaintiffs be authorized to specify the rules. If the issue is, do you have a compelling interest and we move on to the least restrictive prong, then it's MDOC that sets those rules. MDOC says, here's the policy that every religion operating in our Corrections facilities have to comply with and that's you too. The adherence of this faith do not get to define your rules. Even if they are an authorized religion, they must fit within the rules. My concern is I don't see that discussion or the building of that defense in the record that you would be able to impose restrictions that would be protective of what is a very real and concerning interest in safety for the prisoners and the guards and the facility. Well, my answer to that your honor would be that in some of the questions towards the end towards the two plaintiffs in the evidentiary, they were asked, what would you do and and I asked Mr. specifically, isn't that kind of a soft coercion thing. If the MDOC can't tell a prisoner that he can't show up for your Sunday services because he's not white enough. You now are the Christian Identity Group now becomes the enforcer of who gets to show up for their group services. I understood that they had to go by your rules, which is services cannot be refused to anyone who designates themselves in that faith. So I understood the testimony was well if they wanted to come, we would warn them. And if one of our members, one of our adherence to the faith. Was acting inappropriately toward them based on their race, we would expel from that service, our own member isn't that the testimony of record. I don't get that at all. What I did get from Mr parole was a kind of no true Scotsman argument that Hey, no true adherent to the Christian identity faith would do that. And yet the historical record shows the Christian identity faith has been extremely invariantly virulently racist and So, so I am incorrect that there was no statement by these plaintiffs that if one of their adherence sought to exclude someone based on race that they would put that person out from that service. The comment I found was on page ID 2070 where he stated anybody that is truly an identity Christian would not commit an act of any type of violence because we're commanded not to That doesn't in and of itself show anything. It shows one particular member who has a vested interest in portraying the religion is non racist and non violent, but in fact has a history of that and the specific personal history or religious religious history and the difference Is that in the record. Did you place that into the trial testimony. Yes. And the motion for summary judgment had the documents that David leach looked at Trying to think of the, the, the summary judgment motion that discussed that that led to the trial. Can I ask a related question. What have you do you reckon you permit the Nation of Islam and and aren't we don't we have the same. I mean, this was the point raised by your friend on the other side at the outset. They're both separatist separatist on race grounds. I should have thought it was on your burden to explain per judge branches question if you've found least restrictive means for the one. Why not for the other than Todd Beckler did testify to that, Your Honor, he testified that there that the is document to 19 page ID 2044. He did not the nation of Islam does not exclude non blacks as part of their tenants. That's always been the major distinction here with Christian identity is that they are so centrally identified with this notion that no one can attend our services. Are they separatists are they separatists when it comes to marriage. I, I don't know that deeply into there, but in the prison setting a marriage is not really an issue that prison officials have to be concerned with, because it's not something that, you know, prisoners aren't marrying each other within the so in one in one, there's no separatism when it comes to services in the other. There may be ways to read the religious documents that suggest you can only participate together but the two people in this case has said we're not going to force that. So it seems to me you're back to the nation of Islam problem. I respectfully disagree with that honor only in the standpoint that as plaintiffs pointed out, nation of Islam has existed for the last 2025 years within the MDOC, and they have not had those services and that's the specific concern here with the Christian identity because they focus so heavily on. This is the same it made one quick question. Judge Griffin is the same analysis true of the more science temple. I, I don't think the record was really developed that heavily on the more science template, and I don't feel comfortable testifying. I just don't think you judge Griffin. All right, Mr Dean, you're raising a new justification for denying recognition of the religion, you're arguing today that they would not allow non whites to attend services. I think our prior opinion says that this is page 16 of the opinion that on remand the DOC is limited to raising the justifications, it's cited at the time it made the decision to deny plaintiffs request for recognition of Christian identity. One, that the religious beliefs and practices of Christian identity can be adequately met by an existing recognized religious group, and two, that it would threaten the custody and security of all correctional facilities. Now, those are the only two issues that that were not addressed in the prior opinion are they not, and isn't what you're trying to raise today. Really beyond the scope of the remand. No, Your Honor, the did I misread that I misread the opinion that I wrote. Well, this, the second issue that you discussed is what we've been discussing is threatened custody and security. Exactly. And that can take the form of many different things. And that's the specific concern there. Okay, so it's not it's not that they discriminate against Nonwhite people. That's kind of what you're arguing today is kind of a discrimination theory. But you're saying that that kind of goes into the safety concerns. Right. That's the only way we look at it, but it's not independent. There's not an independent claim of discrimination based upon race. No, it's not the security, but you also recognize district court said that the religion itself is non vile. Right. The district court actually, I think, rule that did they not. I do not agree with that, but willing to be convinced otherwise, but I, I do. I don't recall the district court saying that the Christian identity is not dangerous. They were talking about the threat specifically of the racist ideology and I believe in the opinion itself. Let's maybe we can ask Miss Lassiter. Sure. All right. Okay. Great. Thank you, Mr. Dean. Miss Lassiter you're free to pick up but if you want to answer this last question. If you happen to know whether the district court had anything to say on these points, that would be great. Can you repeat the question. Just make sure I understand it correctly. Well, this, this last year page five of the district court opinion. Did the district court say and I quote the CI faith does not promote hatred of the races, nor does it condone violence. Does that, does that accurate statement of the opinion of the district court. Does that answer my question I think. Yes. Yes. So is there anything else Miss Lassiter you'd like to tell us. I just would like to take a moment to note that the historical record that was referenced only refers to events or an incident incidents that occur outside of the prison system. Nothing in any record is within that has been in evidence comes from a violence that occurred by the Christian identity faith within the prison system. And does that have to do with the fact that they have not been admitted as a group as an accepted religion to participate in group services at a, at a jail. Your Honor, it, that could be, that could be a reason, but the, there are people specific like plaintiffs box and fraud, who do identify as the Christian identity, Christian identity members, and they, there's nothing in the record where they have done anything violent or racist within MDLC specifically. So there could be other could, it could be, they could have found evidence of other people who identify as Christian identity members who have also not, and there's no evidence where they have committed any violent acts within MDLC. Thank you. Okay, well thanks to both of you for doing this virtually I'm glad that worked out, Mr. Dean, it's really helpful to have someone with some experiences you have and knowledge about the area and this case in particular. So we're really grateful for your advocacy and Miss Lassiter we're not only grateful for your advocacy but excited about the prospect of you're becoming a lawyer and arguing in front of us more often, I thought you were terrific. The best advice is always to try to answer the questions and you never got off of that, and you were respectful and anyway you've got a really promising career ahead of you. I suspect this was a difficult case for both of you and it's not an easy case for us, frankly, so we're going to do our best with it but feel good about the fact that we've got great lawyers here to help us get to the right place. So thank you very much for your wonderful briefs and excellent oral advocacy and congratulations Miss Lassiter in particular. Thank you very much. All right. Thank you. This honorable court is now adjourned. Counsel you can both disconnect at this time and Marshall if you could confirm that disconnection when it occurs, please.